# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ERNEST JACK HILL, III,** | : | |
| | : | |
| **Plaintiff** | : | **Civil No. 3:10-CV-1743** |
| | : | |
| **v.** | : | **(Judge Kosik)** |
| | : | |
| **HARLEY G. LAPPIN, et al.,** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

## I.    INTRODUCTION

The plaintiff in this <u>Bivens</u>[1] action, Ernest Jack Hill, III, is a federal inmate currently housed at the United States Penitentiary-Victorville, in Adelanto, California, where he is serving a prison sentence imposed following his convictions in the Southern District of Illinois of committing various fraud offenses.

In the second amended complaint, which is the operative pleading in this case, Hill alleges that numerous defendants employed by the Bureau of Prisons have been deliberately indifferent to Hill's serious mental health needs. (Doc. 27.) Specifically, Hill alleges that non-licensed staff prescribed him medication; denied him the opportunity to be seen, evaluated, or provided psychiatric services by local care

---

[1]    <u>Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).

providers; and denied him needed medication, which allegedly aggravated Hill's cardiac and related health conditions. (Id.) Hill seeks monetary damages for Defendants' alleged constitutional violations. Although Hill brings this action in the Middle District of Pennsylvania, review of the second amended complaint reveals that Hill is endeavoring to sue corrections administrators, officials, and employees located in Washington, D.C., Missouri, and Indiana, as well as Pennsylvania, in what he contends was a seamless conspiracy aimed at violating his constitutional rights through deprivation of appropriate and necessary medical treatment for an array of medical and psychiatric ailments.

Defendants have filed a motion to dismiss, or alternatively for summary judgment, on plaintiff's claims.[2] (Doc. 137.) The motion is fully briefed and has been referred to the undersigned for purposes of preparing a report and recommended

---

[2] This is the second time we have considered a dispositive motion in this action, as the defendants previously moved for an order dismissing, or granting summary judgment on, plaintiff's second amended complaint. In response to that earlier motion, we issued a report and recommendation in which we recommended that the motion be granted in substantial part, but that plaintiff's claims against two corrections officers at USP-Canaan be permitted to survive. After the district court referred the matter back to this Court in order to permit the parties time to conduct discovery into plaintiff's claims, defendants filed the motion that is now before the Court, in which they make substantially similar arguments in favor of dismissing this lawsuit against all named defendants.

disposition. For the reasons set forth below, it is recommended that the motion be granted in part and denied in part.

## II. PROCEDURAL BACKGROUND

Hill filed his second amended complaint on February 1, 2011. (Doc. 27.) On April 4, 2011, Defendants moved to dismiss, or in the alternative for summary judgment. (Doc. 38.) Defendants filed a brief in support of the motion the next day. (Doc. 39.) Hill opposed this motion in a brief filed on May 9, 2011. (Doc. 49.) On June 30, 2011, the undersigned issued a report and recommendation in which we recommended that the motion be granted in part, and all claims be dismissed with the exception of plaintiff's allegations that Lieutenant Novak and Correctional Officer Acevedo ignored medical emergencies that he was experiencing on three specific dates. (Doc. 55, at 37.)

Defendants filed limited objections to this report on July 21, 2011. (Docs. 64, 65.) Hill likewise objected to the report on July 25, 2011, and again on October 19, 2011. (Docs. 71, 78.) Thereafter, on November 3, 2011, the District Court referred this matter back to the undersigned and granted Hill's request for an opportunity to take discovery into his claims. (Doc. 80.) Upon receiving this referral, we entered an order on November 8, 2011, in which we denied the pending motion to dismiss

without prejudice to Defendants' right to renew the motion following the discovery that the District Court authorized. (Doc. 81.)

Thereafter, the parties engaged in a lengthy, and sometimes halting, period of discovery. On January 9, 2012, Hill filed three separate discovery-related motions, seeking to compel Defendants to respond to a number of discovery requests. (Docs. 87. 88, and 91.) Defendants responded promptly on January 11, 2012, advising the Court and Hill that there had been some inadvertent delays in responding to Hill's discovery requests, but confirming that discovery responses would be forthcoming, and agreeing to an enlargement of the discovery period. (Doc. 93.) On January 12, 2012, we issued an order granting an extension of the discovery period until March 30, 2012. (Doc. 94.)

Defendants proceeded to serve discovery responses upon Hill between January 18, 2012, and January 25, 2012. (Doc. 98.) On March 26, 2012, noting that the District Court had referred this matter with instructions to allow the parties 60 days to conduct discovery before renewing any dispositive motions, we issued an order directing the Defendants to renew any dispositive motions they wished to file, together with supporting briefs, on or before May 21, 2012. (Doc. 118.) Immediately before, and again after, this order was issued, Hill sought multiple extensions of time to file briefs in support of his discovery motions (Docs. 115, 119, 122.), and on April

24, 2012, Hill filed a single brief in support of all of his motions. (Doc. 129-1.) Defendants filed a responsive brief on May 14, 2012, urging the Court to deny Hill's motions because all responsive discovery had been produced. (Doc. 136.)

While this discovery dispute remained pending, on May 21, 2012, Defendants filed the motion that has now been referred to the Court, seeking either dismissal or summary judgment on all of Hill's claims in the second amended complaint. (Doc. 137.) The motion is now fully briefed. (Docs. 138, 139, 154, 155, 156, 167.) For the reasons that follow, we continue to find that the majority of Hill's claims are subject to dismissal based upon clear and well-settled legal principles. However, we also continue to find that a limited number of Hill's claims against two corrections officers relating to three alleged instances of deliberate indifference to Hill's serious medical needs should be permitted to survive at this time.

## III.   FACTUAL BACKGROUND

Because our first report and recommendation in this case also examined the factual background set forth in Hill's second amended complaint, we include a recitation of that background in this report as well.

The factual background in this matter is thoroughly documented by Hill in his voluminous pleadings. Thus, on August 19, 2010, Hill commenced this action by filing a *pro se* complaint in mandamus against the Defendants, his jailers. (Doc. 1.)

In this complaint Hill alleged that he suffers from panic attacks in prison. According to Hill prison officials failed to provide him with immediate access to a qualified psychiatrist to treat these panic attacks, and failed to prescribe clinically appropriate medications for him to treat this condition. Hill's initial 113-page *pro se* complaint was accompanied by voluminous exhibits. These exhibits extensively detailed some 20 separate medical evaluations of Hill's panic attacks conducted by staff at U.S.P. Canaan over an eight-month period between September 2009 and May 2010. Despite this thoroughly documented history of health care set forth in his pleadings, Hill still invoked a venerable form of judicial relief, a writ of mandamus, to compel a specific course of treatment for his panic attacks.

Over time, Hill's claims and requests for relief shifted and changed. In its current form, Hill's complaints are embodied in a 47-page second amended complaint filed by the plaintiff on January 31, 2011. (Doc. 27.) This second amended complaint, like Hill's prior pleading, is an expansive legal canvas, and in making allegations in this lawsuit Hill typically colors his claims in broad, sweeping strokes.

Thus, Hill's second amended complaint casts a broad web of culpability, naming twenty-four individual defendants. These individual defendants include the Director of the Federal Bureau of Prisons, Harley Lappin; five medical personnel

employed at the Federal Correctional Complex, Terre Haute;[3] as well as prison medical personnel stationed in Springfield, Missouri, Philadelphia, Pennsylvania, and Waseca, Minnesota.[4]

Hill then levels a series of claims against fifteen defendants employed at the United States Penitentiary, Canaan. These defendants range from the warden at this facility, Ronnie Holt, to a corrections lieutenant, correctional officers, along with prison medical and psychological staff. After naming twenty-four defendants in his complaint, Hill – curiously – seeks damages from only eleven of these defendants. (Doc. 27, pp.29-31.) Hill's prayer for damages, like much of the balance of his complaint, is sweeping in its reach, with Hill demanding $500,000 in compensatory damages, and $1,500,000 in punitive damages from each of these defendants. (Id.)[5]

---

[3]The Terre Haute defendants are defendants Klink, Ndife, Tabor, Drummy, and Webster.

[4]These defendants included, Lemuel Arriola, (Waseca, Minnesota), N. Newland, (Philadelphia, Pennsylvania) and James Wolfson, M.D., (Springfield, Missouri).

[5]We further note that the demand for specified compensatory and punitive damages totaling $2,000,000 set forth in the complaint is inappropriate. Rule 12(f) of the Federal Rules of Civil Procedure imposes a duty on the Court to review pleadings and provides that the Court may upon its own initiative at any time order stricken from any pleading any immaterial matter. Fed. R. Civ. P. 12(f). Decisions regarding whether claims may be stricken from a complaint are properly presented to a United States Magistrate Judge for determination in the first instance. Singh v. Superintending School Committee of the City of Portland, 593

Hill's complaint then embarks on a lengthy discourse regarding both his myriad health problems, and the repeated episodes of care and treatment that he has admittedly been provided. At the outset, in his complaint Hill candidly acknowledged that he suffers from a host of psychological, psychosomatic, and physical ailments. Indeed, according to Hill he "has been diagnosed with . . . severe panic disorder for well over 25 years." (Id., p. 9.) Hill also claims to suffer from "cardiac conditions" , "increased . . . blood pressure", " a constant state of anxiety", "recurrent, unpredictable episodes of intense anxiety", "agoraphobia,"[6] "dyspnea, tachycardia, palpitations, headaches, dizziness, parenthesis, chocking[sic], smothering

_____

F. Supp. 1315 (D. Me. 1984). In this case, the plaintiff's claim for a specified amount of unliquidated damages violates Local Rule 8.1 which provides, in part, that: " The demand for judgment required in any pleading in any civil action pursuant to Fed.R.Civ.P. 8(a)(3) may set forth generally that the party claiming damages is entitled to monetary relief but shall not claim any specific sum where unliquidated damages are involved. The short plain statement of jurisdiction, required by Fed. R. Civ.P.8(a)(1), shall set forth any amounts needed to invoke the jurisdiction of the court but no other." Local Rule 8.1 (emphasis added). Since this prayer for relief violates Local Rule 8.1 by specifying a particular amount of unliquidated damages, that specific dollar claim will be stricken from the complaint without prejudice to the Plaintiff arguing in any subsequent trial or hearing on the merits for any appropriate amount of damages supported by the evidence.

[6]Agoraphobia is defined as an abnormal fear of open or public places, occasionally accompanied by a morbid fear of having panic attacks.

feelings, nausea and nervousness", all of which are accompanied by "unrelenting feelings of impending doom." (Id., p.10.)

According to Hill, while he suffered from this cascading array of problems, he was initially housed at the United States Penitentiary, Terre Haute for three months, from September 1, 2009 to November 30, 2009. (Id., p. 12.) During this span of months, Hill states that he "made numerous sick call appointments as well as emergency encounters" with medical staff. Indeed, Hill asserts that during these twelve weeks he was treated "in excess of ten times" by medical staff at Terre Haute. (Id., at p. 13.) Hill then describes many of these medical appointments at length, an extended exegesis by the plaintiff that confirms that his concerns received careful medical attention at the hands of these officials. (Id.)

In the course of this treatment program, on November 5, 2009, Hill was afforded a tele-psychiatric consult with Dr. James Wolfson at the Federal Medical Center in Springfield, Missouri. As a result of this assessment Dr. Wolfson diagnosed Hill as suffering from a generalized anxiety disorder, anti-social personality disorder and borderline personality disorder. (Id., pp.17-18.) In the course of this psychiatry consult, Hill and Dr. Wolfson addressed the medical/pharmacological dispute that lies at the heart of this case. Dr. Wolfson maintained Hill on a number of medications, including citalopram and trazadone,

commonly prescribed drugs for the treatment of anxiety disorders. (Doc. 40, ¶3.)
Hill protested this medical choice, insisting instead that he be given a different class
of drugs, Benzodiazepines, a form of prescription tranquillizer. (Doc. 27, p. 18.)

This dispute over the type of anti-anxiety medication to prescribe for Hill
constitutes the gist of the plaintiff's broadly-framed Eighth Amendment claims.
Thus, at bottom, Hill seems to assert that the failure of prison medical personnel to
provide him with the specific prescription tranquillizer of his choice constitutes cruel
and unusual punishment in violation of the Constitution. With respect to this dispute,
a dispute that is the gravamen of Hill's Eighth Amendment claim, the parties ascribe
different motivations to one another. For his part, Hill speculates, without any further
supporting proof, that the refusal to prescribe this particular medication is part of
some unified, unwritten policy of the Bureau of Prisons, directed at the highest levels
of that agency. The defendants, in turn, justified their choice of medications in more
prosaic terms in the treatment records cited by Hill, stating that they regarded Hill's
repeated claims of anxiety, coupled with his demands for powerful tranquillizers, with
suspicion, and questioning whether this behavior was manipulative, drug-seeking
conduct by the plaintiff. (Doc. 27, p. 18, notes of Dr. Wolfson, quoted in second
amended complaint.)

In December of 2009, Hill was transferred to the United States Penitentiary, Canaan, in Waymart, Pennsylvania. According to Hill's complaint, this change of venue did not lessen his anxiety. Nor did it result in a lesser degree of on-going medical care for the plaintiff. Quite the contrary, Hill's complaint alleges that he was treated no fewer than 35 times by prison medical personnel at the United States Penitentiary, Canaan, between December 8, 2009 and August 5, 2010. (Doc. 27, pp.19-22.) Thus, while housed at this facility Hill was seen by medical staff, on average, once a week. (Id.) Morever, during this time period approximately one dozen different medical professionals examined and treated Hill inside the prison. (Id.) In addition, Hill acknowledges being transported to outside medical facilities on at least three occasions between January and March of 2010, where he received further care and treatment for anxiety attacks and related complaints. (Id.) Despite the high level of on-going care and treatment recited by Hill in his complaint, the plaintiff persists in his claim that these medical personnel at USP Canaan were also deliberately indifferent to his medical needs when they consistently declined his persistent demands for specific types of tranquillizers, while prescribing other anti-anxiety medications for Hill.

In addition to these broadly cast constitutional claims, Hill leveled one other, more specific and narrowly tailored allegation in his second amended complaint.

According to Hill, on three specific instances between February and July of 2010, two correctional staff, Lieutenant Novak and Correctional Officer Acevedo, ignored medical emergencies experienced by Hill late at night or in the early morning hours, and deliberately allowed the plaintiff to lay on the floor of his cell, suffering acute distress for hours before summoning outside medical assistance. (Doc. 27, pp.29-30.)

## IV. The Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment

It is against the backdrop of this thoroughly documented medical treatment history described by Hill, a treatment history marked by a persistent, unrequited demands by the plaintiff for a specific tranquillizer of his personal choice, that the defendants have renewed their motion to dismiss, or in the alternative, for summary judgment. In this motion the defendants seek dismissal of all defendants and all claims advanced by Hill, asserting a battery of defenses to those claims. Thus, defendants argue that: (1) this dispute between an inmate and his care-givers regarding the inmate's choice of tranquillizer for an anxiety disorder does not constitute cruel and unusual punishment in violation of the Eighth Amendment; (2) the defendants are entitled to qualified immunity from damages; (3) Hill may not maintain an action in this court relating to conduct that allegedly occurred in other districts, due to lack of venue and lack of personal jurisdiction over a number of the

defendants; (4) Hill has not established personal responsibility on the part of prison supervisors in this case; and (5) Hill may not maintain a <u>Bivens</u> action against a Public Health Service official. This motion has been fully briefed by the parties, and is now ripe for resolution. Indeed, this is the second time we have considered a dispositive motion in response to plaintiff's second amended complaint, and although this matter has been referred back from the District Court to permit the parties to engage in some discovery prior to ruling on the motion, we find our initial assessment substantively unchanged.

Plaintiff's brief and documents submitted in opposition to defendants' motion for dismissal or summary judgment is long on assertions, conclusions, and related rhetoric, but it is fatally short on evidentiary and legal support for his claims against nearly all of the defendants. Indeed, the evidence submitted by the parties in this case confirms that plaintiff has received nearly continual, substantial medical and psychiatric treatment and care in response to his frequent and serious complaints of mental health and physical ailments. This evidence further confirms that plaintiff has, for years, been prescribed an array of medications to treat his various mental health and related medical issues while incarcerated. Nevertheless, plaintiff maintains in this lawsuit that he believes this treatment has been inadequate, or that he has a

constitutionally guaranteed right to receive different forms treatment and medicine – including treatment and medicine of his own choosing or preference.

What is now evident is that plaintiff is seeking in this lawsuit to assert claims that two dozen prison administrators, officials, and employees are liable for violating his rights under the Eighth Amendment to the United States Constitution by failing to provide him the medical treatment he believes would be most beneficial to him to address his diagnosed anxiety disorder and related cardiac ailments. But the Eighth Amendment does not guarantee an inmate the right to dictate his healthcare decisions within a prison setting, and it does not require prison officials and healthcare providers to acquiesce to an inmate's demands that he be provided specific medicine or treatments in response to real or imagined health concerns. Instead, the Eighth Amendment provides a constitutional guarantee that an inmate's serious medical needs will not go unaddressed by prison officials, and a guarantee that inmates will receive adequate medical care while in custody.

As discussed in greater detail below, these guarantees do not ensure that an inmate may choose the course of his own medical treatment when that treatment has been entrusted to medical professionals, who retain the discretion to exercise their medical judgment when addressing an inmate's health needs, and who, in fact, exercise that discretion. It is not the province of federal courts to superintend those

medical decisions and treatment – and particularly not in a case such as the one before the Court, where an inmate has received years of careful treatment for a variety of mental health and other medical ailments, and where numerous medical professionals have assessed the plaintiff on multiple occasions, have prescribed several different medications to address his myriad illnesses and concerns – including both acute and chronic medical needs – and who have followed up routinely on his frequent complaints to medical and prison staff.

Quite simply, plaintiff's claims against nearly all of the defendants named in this lawsuit fall far short of what is required to maintain a cause of action for deliberate indifference under the Eighth Amendment, and in many cases fail for much more basic rules of constitutional law and federal civil procedure. Thus, with the limited exceptions of plaintiff's claims against two corrections staff at USP-Canaan who he claims were deliberately indifferent to his acute medical needs on three separate occasions where Hill was in a state of medical emergency, we renew our recommendation that the District Court dismiss the claims against all other defendants named in this lawsuit, for substantially the same reasons as those we provided in our initial report and recommendation addressing defendants' first motion to dismiss the second amended complaint. Following our thorough review of the parties' competing submissions of briefs and evidential support, we repeat that earlier analysis below.

# V.    DISCUSSION

## A.    The Defendants Are Entitled To Judgment in Their Favor on Many of the Claims Set Forth in the Second Amended Complaint

### 1.    Standard of Review-Motion to Dismiss, or in the Alternative, Summary Judgment

Defendants have once again framed their motion as one seeking dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56.  When a party moves to dismiss, but where "matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56."  Fed. R. Civ. P. 12(d).  Typically, when a court converts a motion to dismiss into a motion for summary judgment under Rule 56, notice must be given to all parties of the court's intent to do so.  Id.; Garcia v. Newtown Twp., No. 09-CV-3809, 2010 U.S. Dist. LEXIS 20380, 2010 WL 785808, at *3 (E.D. Pa. March 5, 2010).  However, if a motion to dismiss has been filed with an alternative request for summary judgment, the Court of Appeals of the Third Circuit has found that the alternative filing is sufficient to "place the parties on notice that summary judgment might be entered."  Latham v. United States, 306 F. App'x 716, 718 (3d Cir. 2009) (citing Hilfirty v. Shipman, 91 F.3d 573, 578-79 (3d Cir. 1996)).  Accordingly, we

find that it is appropriate to treat defendants' motion as one for summary judgment, and we find further that plaintiff has responded to the motion accordingly.

Rule 56(a) provides that judgment should be rendered if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." See also Davis v. Mountaire Farms, Inc., 453 F.3d 554, 556 (3d Cir. 2006) (summary judgment appropriate only if there are no genuine issues of material fact). In considering a motion for summary judgment, a court must view the evidence and draw all inferences in the light most favorable to the non-moving party, id., and may grant summary judgment only if no reasonable juror could find for the non-movant, Matsushita Elec. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J. 1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of

fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." Shelton v. University of Medicine & Dentistry of N.J., 223 F.3d 220, 223, n.2 (3d Cir. 2000), citing, Stelwagon Mfg. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275, n.17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgement, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. See Buttice v. G.D. Searle & Co., 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. See Burgess v. Allstate Ins. Co., 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. Henry v. Colonial Baking Co. of Dothan, 952 F.Supp. 744 (M.D.Ala.1996).

Bouriez v. Carnegie Mellon Univ., No. 02-2104, 2005 WL 2106582,* 9 (W.D. Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate. See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D. Pa. July 12, 2007); Bouriez v. Carnegie Mellon Univ., No. 02-2104,

2005 WL 2106582,* 9 (W.D. Pa. Aug. 26, 2005); Carpet Group Int'l v. Oriental Rug Importers Assoc., Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F. App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple Univ., 697 F.2d 90, 96 (3d Cir. 1982)." [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969). Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985) (citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

**B.** **Legal Standards Governing Qualified Immunity and Eighth Amendment "Deliberate Indifference" Claims in a Prison Medical Context**

**1.** **The Eighth Amendment**

In this case, the gravamen of Hill's complaint is that prison officials violated his rights under the Eighth Amendment to the United States Constitution by displaying "deliberate indifference" to his medical needs. Hill faces an exacting burden in advancing this Eighth Amendment claim against prison officials in their individual capacities. To sustain such a claim, Hill must:

> [M]eet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (quotation marks and citations omitted). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. "Deliberate indifference" is a subjective standard under Farmer-the prison official-defendant must actually have known or been aware of the excessive risk to inmate safety.

Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).

These principles apply with particular force to Eighth Amendment claims premised upon inadequate medical care. In the medical context, a constitutional violation under the Eighth Amendment occurs only when state officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97, 105 (1976). To establish a violation of his constitutional right to adequate

medical care in a prison setting, Hill is required to point to evidence that demonstrates both (1) a serious medical need, and (2) acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).

Deliberate indifference to a serious medical need involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104. Such indifference may be evidenced by an intentional refusal to provide care, delayed provision of medical treatment for non-medical reasons, denial of prescribed medical treatment, denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or by "persistent conduct in the face of resultant pain and risk of permanent injury," White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

However, it is also clear that the mere misdiagnosis of a condition or medical need, or negligent treatment provided for a condition, is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Furthermore, in a prison medical context, deliberate indifference is generally not found when some significant level of medical care has been offered

to the inmate. <u>Clark v. Doe</u>, 2000 U.S. Dist. LEXIS 14999, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care"). Thus, such complaints fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference. <u>See e.g.</u> <u>Brown v. Borough of Chambersburg</u>, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". <u>Gindraw v. Dendler</u>, 967 F.Supp. 833, 836 (E.D. Pa. 1997). Applying this exacting standard, courts have frequently rejected Eighth Amendment claims that are based upon the level of professional care that an inmate received; <u>see, e.g.</u>, <u>Ham v. Greer</u>, 269 F. App'x 149 (3d Cir. 2008); <u>James v. Dep't of Corrections</u>, 230 F. App'x 195 (3d. Cir. 2007); <u>Gillespie v. Hogan</u>, 182 F. App'x 103 (3d Cir. 2006); <u>Bronson v. White</u>, No. 05-2150, 2007 WL 3033865 (M.D. Pa. Oct. 15, 2007); <u>Gindraw v. Dendler</u>, 967 F.Supp. 833 (E.D. Pa. 1997), particularly where it can be shown that significant medical services were provided to the inmate but the prisoner is dissatisfied with the outcome of these services. Instead, courts have defined the precise burden which an inmate must sustain in order to advance an Eighth Amendment claim against a healthcare professional premised on allegedly inadequate care, stating that:

The district court [may] properly dis[miss an] Eighth Amendment claim, as it concerned [a care giver], because [the] allegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F.App'x. at 197-198 (citations omitted).

In short, in the context of the Eighth Amendment, any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional medical judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (quoting Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977)).

Furthermore, it is well-settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim. See Taylor v. Norris, 36 F. App'x 228, 229 (8th Cir. 2002) (deliberate

indifference claim failed when it boiled down to a disagreement over recommended treatment for hernias and decision not to schedule a doctor's appointment); Abdul-Wadood v. Nathan, 91 F.3d 1023, 1024-35 (7th Cir.1996) (inmate's disagreement with selection of medicine and therapy for sickle cell anemia falls well short of demonstrating deliberate indifference); Sherrer v. Stephen, 50 F.3d 496, 497 (8th Cir.1994) (inmate's "desire for a replacement joint instead of fusion surgery is merely a disagreement with the course of medical treatment and does not state a constitutional claim"); Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir.1994) (prison provided escalating level of treatment for inmates's ailments over time, and inmate's disagreement with course of medical treatment was insufficient basis for Eighth Amendment violation); Czajka v. Caspari, 995 F.2d 870, 871 (8th Cir.1993) (inmate's mere disagreement with doctor's informed decision to delay surgery does not establish Eighth Amendment claim); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir.1990) (inmate failed to prove deliberate indifference where his complaints represented nothing more than mere disagreement with course of his medical treatment); Lair v. Oglesby, 859 F.2d 605, 606 (8th Cir.1988) (disagreement about whether doctor should have prescribed medication does not result in constitutional violation); Martin v. Sargent, 780 F.2d 1334, 1339 (8th Cir.1985) (Inmate failed to state facts indicating doctor deliberately disregarded his medical problem; inmate's disagreement as to

proper medical treatment does not give rise to Eighth Amendment violation). Therefore, where a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since "the exercise by a doctor of his professional judgment is never deliberate indifference." Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997)(citations omitted).

Here the gist of Hill's far-ranging Eighth Amendment claim involves a dispute between an inmate and his care-givers over a choice of tranquillizer to address Hill's anxiety disorders. Thus, reduced to its starkest terms, Hill's claims are premised on an assertion that this federal prisoner has a right to treatment with his personal drug of choice. To the extent that Hill continues to insist that the Eighth Amendment confers a right to inmates to dictate the pharmacological details of their treatment programs he errs. Quite the contrary, it is well-settled that disputes between inmates and medical professionals concerning which of several available medications to use in treating a specific medical problem simply do not rise to the level of a constitutional infraction involving deliberate indifference to a serious medical need. Indeed, courts have repeatedly held that when an inmate's Eighth Amendment claim entails nothing more than a disagreement concerning which type of medication to prescribe for a particular ailment, prison officials are entitled to a judgment in their

favor as a matter of law.  See e.g., Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir. 2009)(same); Whooten v. Bussanich, 248 F. App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F. App'x 390 (3d Cir. 2007)(same).

There is a necessary corollary to these principles, limiting the reach of the Eighth Amendment in a prison medical setting.  In a case such as this, where the plaintiff's complaint reflects that an inmate received some level of on-going medical care, it is also well-established that non-medical correctional staff may not be "considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).  The rationale for this rule has been aptly explained by the United States Court of Appeals for the Third Circuit in the following terms:

> If a prisoner is under the care of medical experts . . . , a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.  This follows naturally from the division of labor within a prison.  Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on.  Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.  Moreover, under such a regime, non-medical officials could even have a perverse incentive *not* to delegate

treatment responsibility to the very physicians most likely to be able to help prisoners, for fear of vicarious liability. Accordingly, we conclude that, absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference

Spruill v. Gillis, 372 F.3d 218, 236 (3d. Cir. 2004).

Applying this standard, courts have repeatedly held that, absent some reason to believe that prison medical staff are mistreating prisoners, non-medical corrections staff who refer inmate medical complaints to physicians may not be held personally liable for medically-based Eighth Amendment claims. See, e.g., Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006); Spruill v. Gillis, supra; Durmer v. O'Connor, supra; Garvey v. Martinez, No. 08-2217, 2010 WL 569852 (M.D. Pa. Feb. 11, 2010); Hodge v. United States. No. 06-1622, 2007 WL 2571938 (M.D. Pa. Aug. 31, 2007). This rule applies specifically to those prison staff whose involvement in a medical matter consists solely of examining, reviewing and addressing an inmate grievance concerning medical issues. Where non-medical corrections staff simply review a grievance, and refer an inmate to medical personnel, it is clear that "merely responding to or reviewing an inmate grievance does not rise to the level of personal involvement necessary to allege an Eighth Amendment deliberate indifference claim."

Garvey v. Martinez, 2010 WL 569852, 7 (M.D.Pa. Feb. 11, 2010)(citations omitted); see Johnson v. Doughty, 433 F.3d 1001 (7th Cir. 2006).

## 2.     Qualified Immunity–Legal Standards

However, even if Hill was able to state a colorable claim based upon the alleged failure to give him his tranquillizer of choice, these allegations, standing alone, would not entitle him to recover damages from government officials in their individual capacities, since these officials are cloaked with a qualified immunity from damages. The doctrine of qualified immunity shields government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The doctrine protects public officials "from undue interference with their duties and from potentially disabling threats of liability." Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005). In accordance with this doctrine, government officials will be immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise their discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first in consideration of the circumstances presented by the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 129 S. Ct. 808, 818 (2009). "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. This inquiry "must be undertaken in light of the specific context of the case." Id. at 201. Accordingly, "to decide whether a right was clearly established, a court must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 129 S. Ct. at 820, and it may forego difficult constitutional issues and confer qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant

v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).").  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment.  See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

It is well established that qualified immunity is " an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial [or the defendants is compelled to undergo other burdens of litigation]."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)(emphasis in original).  Therefore, "[w]here possible, qualified immunity should even protect officials from pretrial matters such as discovery, for '[i]nquiries of this kind can be peculiarly disruptive of effective government.' "  Chinchello v. Fenton, 805 F.2d 126, 130 (3d Cir. 1986)(citations omitted).

Moreover, these qualified immunity determinations entail an assessment of whether the constitutional right claimed by the plaintiff was clearly established in the factual context presented to the government official defendants.  Thus, where

30

government officials are presented with care and treatment issues relating to an inmate who suffers from an anxiety disorder, the discretionary choices which they make in treating that disorder are cloaked in qualified immunity unless those choices contravened clearly settled law.  See  Perez v. Oakland County, 466 F.3d. 416 (6th Cir. 2007)(conferring qualified immunity to officials in Eighth Amendment claim involving care of inmate with anxiety disorder).

**C.** **Hill Has Failed to Show a Clearly Established Eighth Amendment "Deliberate Indifference" Claim Relating to His Dispute Regarding Choice of Medications in this Prison Medical Context**

In this case, judged against these exacting standards, it is evident that Hill has not met the legal and factual threshold necessary to sustain an Eighth Amendment claim of deliberate indifference to his serious medical needs with respect to his broad claims arising out of his dispute with his care-givers concerning the choice of tranquillizer prescribed to him.  Therefore, it is recommended that the Court find that the defendants are entitled to summary judgment on this Eighth Amendment claim.

At the outset, it is entirely undisputed that the plaintiff received extensive, on-going medical treatment for these psychological, psychosomatic and physical conditions over the span of more than two years.  During this time Hill was examined and treated on dozens of occasions.  He received a wide array of treatments including

medications, counseling and outside medical care. Numerous health care professionals committed their time and talents to this treatment, meeting with Hill, evaluating him, counseling and caring for him. Indeed, Hill was provided with a medical consultation with a specialist, Dr. Wolfson, in an effort to address his needs. All of this on-going care is undisputed in the factual record, and is fatal to Hill's claim that these health care professionals have been deliberately indifferent to his medical needs since "the exercise by a doctor of his professional judgment is never deliberate indifference. See, e.g., Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir.1990) ('[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights.')". Gindraw v. Dendler, 967 F.Supp. 833, 836 (E.D. Pa. 1997).

In his pleadings Hill concedes that he received on-going medical care, a concession that defeats this Eighth Amendment claim. Indeed, Hill's complaint outlines in detail repeated treatments that he received. (Doc. 27.) Moreover, while Hill is plainly dissatisfied with his medical outcomes, and desires a specific medication, he has acknowledged in his pleadings that he received continuing medical treatment beginning in 2009. Because the longstanding course of this treatment thoroughly rebuts any claim of deliberate indifference to his medical needs, Hill is reduced in his pleadings to contesting one specific aspect of this treatment–the

decision to deny him one type of tranquillizer. Thus, stripped to its essentials, Hill's claim is not that he was denied or deprived treatment. Rather, it is simply a dispute between an inmate and his health-care providers over the precise nature of this treatment; a dispute that turns on a difference of opinion regarding the efficacy of alternate medications.

As a legal matter disputes between inmates and medical professionals concerning which of several available medications to use in treating a specific medical problem simply do not rise to the level of a constitutional infraction involving deliberate indifference to a serious medical need. Rather, courts have repeatedly held that when an inmate's Eighth Amendment claim entails nothing more than a disagreement concerning which type of medication to prescribe for a particular ailment, prison officials are entitled to a judgment in their favor as a matter of law. See, e.g., Gause v. Diguglielmo, 339 F. App'x 132 (3d Cir. 2009)(dispute over choice of medication does not rise to the level of an Eighth Amendment violation); Innis v. Wilson, 334 F. App'x 454 (3d Cir. 2009)(same); Whooten v. Bussanich, 248 F. App'x 324 (3d Cir. 2007)(same); Ascenzi v. Diaz, 247 F. App'x 390 (3d Cir. 2007)(same).

Thus, in its present posture, Hill's Eighth Amendment claims against prison medical staff should be dismissed since those:

[A]llegations merely amounted to a disagreement over the proper course of his treatment and thus failed to allege a reckless disregard with respect to his . . . care. The standard for cruel and unusual punishment under the Eighth Amendment, established by the Supreme Court in Estelle v. Gamble, 429 U.S. 97, 104 (1976), and its progeny, has two prongs: 1) deliberate indifference by prison officials and 2) serious medical needs. "It is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.' " "Nor does mere disagreement as to the proper medical treatment support a claim of an eighth amendment violation." . . . . [The inmate] alleged no undue delay in receiving treatment and, as the district court noted, the evidence he presented established that he received timely care . . . . Although [an inmate plaintiff] may have preferred a different course of treatment, [t]his preference alone cannot establish deliberate indifference as such second-guessing is not the province of the courts.

James, 230 F. App'x. at 197-198.(citations omitted).

Moreover, it is also apparent that whatever Eighth Amendment right Hill may be asserting with respect to this choice of medication was not clearly established as a matter of constitutional law. Since government officials presented with care and treatment issues relating to an inmate who suffers from an anxiety disorder, are entitled to qualified immunity for the discretionary choices which they make in treating that disorder, unless those choices contravened clearly settled law, see Perez v. Oakland County, 466 F.3d. 416 (6th Cir. 2007)(conferring qualified immunity to officials in Eighth Amendment claim involving care of inmate with anxiety disorder), Hill's failure to show a clearly established constitutional right to choose his preferred

34

medications is also fatal to his damages claims against all prison health care providers. Therefore, these defendants would also be entitled to qualified immunity on these claims.

**D.      Hill's Claims Against Other Specific Defendants Fail as a Matter of Law**

Beyond these broad, over-arching flaws in Hill's pleadings, the second amended complaint is deficient in a number of more narrow, and specifically tailored ways. These more narrowly focused deficiencies, which apply to particular claims and parties, are discussed separately below.

**1.      Hill's Claims Against Supervisory Defendants Fail as a Matter of Law**

At the outset, in his complaint Hill names a number of supervisory officials as defendants. These supervisory official defendants include the Director of the Federal Bureau of Prisons, Harley Lappin; the warden at the United States Penitentiary, Canaan, Ronnie Holt; as well as number of medical supervisory staff who are not alleged to have engaged in direct care of the plaintiff, but simply oversaw those who actually provided this care to Hill.

With respect to these supervisory officials, we find that Hill's claims fail as a matter of law. In considering claims brought against supervisory officials arising out

of alleged Eighth Amendment violations, the courts recognize that supervisors may be exposed to liability only in certain, narrowly defined, circumstances. For example, supervisory liability will rest on the basis that supervisors maintained deficient policies, but only where a plaintiff shows that supervisors have failed to meet an exacting four-part test based upon the reasoning of <u>City of Canton v. Harris</u>, 489 U.S. 378 (1989), for supervisory liability on an Eighth Amendment claim for failure to supervise. Under this test, "the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of the Eighth Amendment injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." <u>Beers-Capitol</u>, 256 F.3d at 134 (citing <u>Sample v. Diecks</u>, 885 F.2d 1099, 1118 (3d Cir. 1989). Accordingly:

> [T]o make out a claim of deliberate indifference based on direct liability (i.e., insofar as the defendants are alleged to have known of and ignored the particular risk that Whetzel posed, the plaintiffs must meet the test from <u>Farmer v. Brennan</u>: They must show that the defendants knew or were aware of and disregarded an excessive risk to the plaintiffs' health or safety, and they can show this by establishing that the risk was obvious. For the plaintiffs' claims seeking to hold supervisors liable for their deficient policies, <u>Sample's</u> four-part test provides the analytical structure for determining whether the policymakers exhibited deliberate indifference to the plaintiffs' risk of injury, it being simply the deliberate indifference test applied to the specific situation of a policymaker.

<u>Id.</u>

In this setting the Third Circuit has noted that, in order to defeat a motion for summary judgment, a plaintiff alleging deliberate indifference on the part of prison officials "must present enough evidence to support the inference that the defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm." Id. at 132.

In this case, Hill has asserted that the medical problems he encountered were the result of unwritten, unconstitutional, but widespread policies, instigated by prison supervisors. This claim fails for at least three reasons.

First, this claim fails as a matter of pleading. In this case, Hill's allegations relating to these prison supervisors are little more than a "formulaic recitation of the elements of a cause of actions [which as a legal matter] will not do." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

Second, this claim fails as a matter of proof. Hill's proof of these allegations that these supervisors promoted unconstitutional policies is wholly deficient. Indeed, in this regard, Hill's contentions consist of nothing more than " bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)), which are plainly insufficient to defeat a motion for summary judgment.

But more fundamentally this claim fails because it rests on a legally flawed premise. The premise underlying Hill's claims against these prison supervisors is that they instituted policies through their subordinates which violated his constitutional rights. Thus, it is an essential component of this claim that Hill demonstrate that the care he received fell below constitutional standards and constituted "deliberate indifference" to his serious medical needs. Yet, we have found that the level of care which Hill describes in his pleadings thoroughly rebuts any claim of deliberate indifference to the plaintiff's medical needs by prison medical staff. Quite the contrary, over the past two years, Hill received dozens of medical appointments with numerous medical personnel. During this period, he was provided counseling, therapy, prescription medications, and outside care. We have also concluded that Hill's complaint regarding the refusal of prison officials to prescribe for him his drug of choice does not state a claim of constitutional dimension. Since the treatment Hill received from prison medical fully comported with the requirements of the Eighth Amendment, these prison supervisors cannot be faulted for establishing policies and supervising staff in a way that meet their constitutional obligations.

Furthermore, it is equally clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was the prison warden, or a prison supervisor, when the incidents set forth in the complaint occurred.

Quite the contrary, to state a <u>Bivens</u> constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902 (3d Cir. 1997); <u>see also</u> <u>Maine v.Thiboutot</u>, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to prison supervisors it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988).

<u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . <u>See</u> <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also <u>Dunlop v. Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly

superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties").  Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  129 S.Ct. 1937, 1948 (2009).  Applying these benchmarks, courts have frequently held that, in the absence of evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates.  O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W. D. Pa. 2004).

In this case, fairly construed, Hill's claims against these supervisory defendants consist of little more than assertions of *respondeat superior* liability, coupled with factually unsupported claims that the supervisors established constitutionally corrupt policies, conclusory claims that simply fail to "present enough evidence to support the inference that the defendants knowingly and unreasonably disregarded an objectively intolerable risk of harm."   Beers-Capitol, 256 F.3d at 132.   Therefore, these supervisory defendants are entitled to be dismissed from this case.

## 2. Venue Does Not Lie In This District Over Defendants Who Are Alleged to Have Taken Actions in Indiana and Missouri

Furthermore, in his second amended complaint, Hill brings a series of claims against prison medical staff in Terre Haute, Indiana, and Springfield, Missouri,[7] arising out of medical care received by the plaintiff in those locations prior to his transfer into this district. These defendants now seek to be dismissed from this lawsuit, asserting that the court lacks jurisdiction and venue over these disparate events occurring in other states.

With respect to these claims and defendants, we agree that Hill's complaint runs afoul of a threshold obstacle. Venue plainly does not lie in this district over these claims and defendants. This case is a federal civil rights action. In such cases, where alleged violations of the United States Constitution form the basis for the court's jurisdiction, 28 U.S.C. § 1391(b) defines the proper venue and provides that an action should:

> be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action

---

[7]The Terre Haute, Indiana, defendants are defendants Klink, Ndife, Tabor, Drummy, and Webster. Dr. Wolfson, in turn, is named as a defendant solely because of actions taken by this defendant in Springfield, Missouri.

is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).

In this case, as to the Missouri and Indiana defendants, "a substantial part of the events or omissions giving rise to the claim occurred" in Missouri and Indiana. Indeed, all of the acts alleged in the complaint concerning these defendants took place in those states. Moreover, it appears that all of these defendants either reside in, or may be found in, those two states. Thus, these matters and defendants all fall outside the venue of this Court.

Hill cannot save these claims by arguing that they are part of some singular scheme, since it is evident that Hill's complaint identifies these alleged events as discrete acts, committed by disparate actors, at different times and places. Furthermore, as we have previously noted, Hill's claims of an overarching, yet unwritten conspiracy, are wholly speculative, conclusory and unsupported. Therefore, these " bare assertions, conclusory allegations or suspicions," Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)), cannot serve to defeat a motion for summary judgment.

Where, as here, a complaint alleges different acts, by disparate actors, committed at separate and distinct times and places, joinder of these events in a single

venue is not appropriate under Rule 20.  See, e.g.,Mincy v. Klem, 303 F.App'x 106 (3d Cir. 2008); Swan v. Ray, 293 F.3d 1252 (11th Cir. 2002); Wilson v. Kerestes, No. 10-1174, 2010 WL 4861122 (M.D. Pa. Oct. 1, 2010); Bricker v. Harlow, No. 09-582, 2009 WL 1743905 (M.D.Pa. June 17, 2009); Bay v. City of Philadelphia, No. 03-5358, 2005 WL 950608 (E.D. Pa. April 20, 2005).  Since venue does not lie in this district over the matters complained of by Hill in Indiana and Missouri, and those separate acts should not be joined to the events which occurred months later in this district, dismissal of these claims and defendants is appropriate here.

**E.    Disputed Factual Issues Preclude Summary Judgment as to One of the Plaintiff's Claims at this Time**

While we continue to find that the majority of Hill's claims fail as a matter of law for multiple reasons, we also again conclude that there are unresolved factual issues that preclude summary judgment on one specific claim Hills has made against two defendants.  In his second amended complaint, Hill levels one specific and narrowly tailored allegation.  According to Hill, on three specific instances between February and July of 2010, two correctional staff, Lieutenant Novak and Correctional Officer Acevedo, ignored medical emergencies experienced by Hill late at night or in the early morning hours, and deliberately allowed the plaintiff to lay, suffering acute distress on the floor of his cell for hours before summoning outside medical assistance.

(Doc. 27, pp.29-30.)   These allegations, if true, might state a viable Eighth Amendment claim for deliberate indifference to a serious medical need.

Defendants have argued that these defendants could not have committed the alleged violations, because they were either scheduled to be off work on the particular dates alleged in the second amended complaint, or because they were assigned to a different area of USP-Canaan on the day in question.  (Def. Statement of Material Facts ¶¶ 51-66.)  In addition, defendants argue that plaintiff did receive medical care in response to complaints of physical symptoms, and insist that Hill has failed to present evidence to show that his medical needs were ignored.  Plaintiff argues that defendants' proffer of evidence regarding the work schedules of these two defendants is insufficient to demonstrate the absence of a disputed issue of fact, and plaintiff further argues that the precise dates alleged in the complaint may be inaccurate because he has been unable to obtain discovery that would reveal the dates on which the alleged acts or omissions occurred.  Upon consideration, we disagree that the factual record is so complete as to permit summary disposition of this claim at this time.  Since we continue to find that the factual record is incomplete as to this particular claim, it is recommended that defendants' motion be denied, at present, as to this specific allegation relating to these particular defendants.

## VI. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion to dismiss or in the alternative for summary judgment (Doc. 137.) be GRANTED as to all claims and defendants with one exception. As to Hill's assertion that, on three specific instances between February and July of 2010, two correctional staff, Lieutenant Novak and Correctional Officer Acevedo, ignored medical emergencies experienced by Hill late at night or in the early morning hours, and deliberately allowed the plaintiff to lay on the floor of his cell, suffering acute distress for hours before summoning outside medical assistance, (Doc. 27, pp.29-30.), there remain disputed issues of material fact which preclude summary judgment at this time.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or

modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 10th day of October 2012.

**_S/Martin C. Carlson_**
Martin C. Carlson
United States Magistrate Judge